Brockenbrough, J.
concurred in the opinion of judge Cabell.
Tucker, P.
In this case I think it sufficiently appears, without a resort to the answer of Weaver, that there was a partnership in the boating business, commencing in 1825 and running into the year 1826. During that year, it was dissolved. In preparation for the business of that year, the slaves in question were hired by Trimble the partner of Weaver. It matters not, therefore, whether there was a subsequent dissolution or not. The transaction was during the partnership, and for its purposes. If it had been made in the name of the partners, and not under seal, it could not have been questioned that Weaver was responsible. He alleges, indeed, *431 that the partnership was a limited one; that he was to find the boats, and Trimble the hands. But this is not proved, and the imperfect character of Weaver’s recollections (proceeding from the circumstance that the transactions of this concern were entrusted to his clerks and agents, or from some other cause) forbids implicit confidence in the answer. I rely rather upon the testimony of the witnesses, which goes to establish a general partnership. Yet it is perhaps of little moment how this fact may be. For even if the alleged arrangement was made between the partners, that Weaver should find the boats and Trimble the hands, yet the public had nothing to do with that arrangement, and as Weaver was to get half the profits, he was responsible for the hires, since that interest in the profits, ipso facto, constituted him a partner. In Dry v. Boswell, 1 Camp. 329. where, in a boating partnership, one party was to furnish boats, the other nevertheless was held responsible for the repairs, upon the general principles of partnership. So here, though Trimble was to furnish hands, yet Weaver, as a partner who was to receive one half of their profits, was responsible for their hires.
Conceiving it then to be clear, that if the hiring had been by contract not under seal, and expressly upon the credit of the firm, Weaver’s responsibility would have been undoubted, I will next remark, that as I interpret the testimony, Tapscott did understand from Trimble that there was a partnership between himself and Weaver, and accordingly contracted upon the faith of Weaver’s liability. But if I am mistaken in this construction, then the ordinary case is presented, of a contract for a firm by the ostensible partner, there being a secret partner unknown at the time, who receives the benefit of the contract. If, as it appears to me, there was a partnership throughout the year 1825, and running into the year 1826 till the boating season was over or far advanced, and these slaves were employed in boating, then they *432 clearly came into the use of the concern, and contribuJ ted in no small degree to the handsome profits admitted to have been received : and if so, upon the general principles of partnership, those who were to share the profits were bound for their hires,
If, then, Weaver would have been clearly responsible had these contracts been without seal, it only remains to enquire whether that will make a difference here. And I think it will not. At law, indeed, the partner who does not join in a bond is not bound by the sealing of his copartner. But equity looks into the character of the transaction. It looks not to the form of the thing, but to the substance. The seal cannot hide from its searching eye the real nature of the case, or the. consideration or intention of the contract. It respects, indeed, that intention, if fair and upright, as much as a court of law. If, therefore, it.appears that the- bond of an individual partner is taken with a view to his distinct responsibility, a court of equity would not thwart that intention by disregarding his individuality. But if, on the other hand, it appears, that though the contract is under seal, it is for the firm; if the firm is looked to on the one part, and intended to be contracted for on the other; or if the contract is for matters germane to the business of the concern, and the benefit of it goes to the copartnery ; then the partners are bound, notwithstanding the form of the transaction. The case of Sale v. Dishman's ex'ors was decided on these principles.
Looking, then, to the real character of the transaction, let us see whether there is any thing from which it can be inferred that the individual responsibility of Trimble, a poor boatman, was looked to. The bond is the only ground of inference, and that loses all force, when we consider that it was most probably adopted in conformity with general usage in the hire of slaves, and in compliance with the notions and requisitions of the owner. On the other hand, if Tapscott was informed of *433 the partnership, as he alleges, every presumption of law is in favour of the intention to look to the firm rather than the individual partner. “It is possible,” says chief baron Macdonald, (2 Camp. 99.) “ that separate credit may be given to one of two partners individually, but the presumption of law is otherwise, and that presumption must be rebutted by very clear evidence.” And this is reasonable; for why should the partner desire to bind himself and absolve the concern ? or why should the dealer with him prefer to bind him individually, when, if bound as a partner, he is personally not less bound, and there is the additional security of his partner? In this case, it is absurd to suppose that Tapscott took Trimble's individual responsibility, if he knew of Weaver's connexion with him; and if he did not know of it, then the execution of a sealed instrument could not have been with a view to indicate his individual responsibility, in contradistinction to that of the concern. In every view of the case, then, I am for affirming the decree.
I have said nothing of the cases from East and from Simons, because they have been already commented on by one of my brethren. I do not think they can have any influence upon this case.
Brookk, J. concurred in opinion to affirm the decree.
Decree affirmed.